# EXHIBIT A

COUNXEL

*2222 South Dobson Road, Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
www.counxel.com
**For Court Use Only: docketing@counxel.com**
Timothy F. Coons (031208)
tcoons@counxel.com
Aaron S. Ludwig (018841)
aludwig@counxel.com
*Attorneys for Plaintiff*

**SUPERIOR COURT OF ARIZONA**
**COCHISE COUNTY**

| | |
|---|---|
| ADAM BRAKE, an individual, | Case No. S0200CV202300580 |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | (Assigned to the Honorable David Thorn) |
| CHIRICAHUA COMMUNITY HEALTH CENTERS, INC., an Arizona nonprofit corporation; and, JONATHAN MELK and DARLENE MELK, husband and wife, | |
| Defendants. | |

Plaintiff ADAM BRAKE ("Brake"), for his First Amended Complaint against Defendants CHIRICAHUA COMMUNITY HEALTH CENTERS, INC. ("CCHCI"), JONATHAN MELK ("Melk") (CCHCI and Melk are collectively referred to as "Defendants") and DARLENE MELK, alleges as follows:

**Parties, Jurisdiction, and Venue**

1.     Brake is an individual and resident of Cochise County, Arizona.

2.     CCHCI is an Arizona nonprofit corporation doing business in Cochise County, Arizona.

3.     Melk and DARLENE MELK are husband and wife, residents of Cochise County, Arizona, and at all relevant times acted on behalf of their marital community.

6/10/24-Response due

DOCKETED
On 05/20/24, 3:38 pm
By GContreras

4.      All acts or omissions that are the basis of or give rise to the causes of action included in this First Amended Complaint took place within Cochise County, Arizona.

5.      Jurisdiction and venue are appropriate in this Court.

6.      This is a Tier 3 case for discovery purposes.

**Allegations**

7.      Brake hereby incorporates and re-alleges all of the foregoing paragraphs as if fully set forth here.

8.      All acts and omissions of Melk are attributable to CCHCI and all acts and omissions of CCHCI are attributable to Melk.

9.      Both CCHCI and Melk are liable for certain actions described herein irrespective of the principal/agent relationship between CCHCI and Melk.

10.     Melk is the Chief Executive Officer (CEO) of CCHCI.

11.     Brake was hired by CCHCI in 2023 as Chief Financial Officer.

12.     CCHCI having been in hard financial times recently, Brake had conversations at the chief level about the proper way to cut costs, including salary.

13.     Melk conveyed to Brake his belief that salaries needed to be cut companywide, but Brake believed that, as leaders of CCHCI, the chiefs needed to take ownership over the mess that CCHCI was in, and that CCHCI should look at trimming the metaphorical fat among the chiefs.

14.     On July 13, 2023, Brake wrote an email to Melk stating that cuts need to happen at the top of the organization rather than everyone receiving a pay cut and pointing out that CCHCI has seven, highly-compensated chiefs whose salaries should be reviewed first for cuts.

15.     Brake conducted an audit/research on the chiefs' salaries and, initially, he discovered that one chief's salary was not in the proper range, but shortly thereafter, he discovered that at least two chiefs' salaries were out of range and that for one chief, a fair-market evaluation was never done.

16.     As part of the audit/research, Brake contacted Igor Shegelov with

2

HRKnow, a third-party contractor who helps with fair-market wage analysis to keep CCHCI in compliance with 26 U.S.C. §4958 (taxes on excess benefit transactions) to make sure that, even if CCHCI cut salaries of its top leaders, a way could be found to keep them in fair-market wage range per federal law and IRS rules and regulations.

17.     Brake sent an email to Mr. Shegelov confirming the C-Suite positions and director-level positions to be reviewed.

18.     On a call with Mr. Shegelov and his assistant Ms. Laurie Restad-Hamilton, Mr. Shegelov told Brake that the salary of Chief of External Affairs and Foundation Director Dennis Walto raised immediate concern because it looked too high.

19.     Mr. Shegelov told Brake that Mr. Shegelov did not approve a salary that high; asked Brake if Mr. Walto is a "JD" or an "MD;" and, when Brake confirmed that Mr. Walto was neither, Mr. Shegelov said that the salary does not look right.

20.     While on the call, Mr. Shegelov and Ms. Restad-Hamilton searched for the paper trail of approval for the salary and found a) an email to Roxana Smith sent on December 22, 2021 stating that the recommended salary range from HRKnow was "salary grade 120" (between $88,000 and $133,000 annually) and b) a reply email from Melk that same day, stating that Mr. Walto was a "special situation" and opting to put him at a salary grade significantly higher, grade 128 or $311,334.  Melk stated in that email that the Board and Finance Committee had been made aware of Mr. Walto's salary requirement.

21.     As part of audit/research, Brake called the Director of Finance Gary Macpherran to ask if he had any email prior to the date of Mr. Walto's hire regarding salary requirements, and Mr. Macpherran said that he did not.

22.     Brake also called CCHCI's then-Controller Ms. Sherry Ost about whether she recalled a conversation about Mr. Walto's salary and she did not.

23.     Brake reviewed the Minutes from the December 2021 and January 2022 meetings of CCHCI's Board of Directors to determine if the specific salary was discussed, but he found nothing.

24.     Brake called former Board President Carrie Gustafsen and asked her if she was ever made aware of Mr. Walto's salary requirement prior to hire.  She said no and that, generally speaking, the Board stayed out of conversations about salaries other than the salary of the CEO.

25.     After confirming that, to the best of his knowledge, no one was made aware of the salary requirements prior to Mr. Walto's hire, Brake consulted the IRS Handbook for requirements to have salaries outside of the fair-market wage, also known as excess compensation, then decided to report his findings to the Finance Committee and to recommend that CCHCI hire a third-party to review the situation.

26.     The CCHCI handbook states, "if the individual is uncomfortable speaking with the supervisor, or the supervisor is a subject of the concern, the individual should report the concern directly to the Risk Manager & Corporate Compliance Officer, a member of the Human Resource Department" but, given that Melk was involved with Mr. Walto's salary and that CCHCI's then-Compliance Officer Randal Christensen was a longtime colleague of Melk dating back to residency, Brake thought it would be best to disclose the information to the both of them and to the Finance Committee (that includes the Board President, Vice-President, and Treasurer) at the same time, to avoid the risk of any confusion about the message and to fulfill his duty in a timely and concise manner.

27.     At the Finance Committee meeting on July 13, 2023, Brake reported that a) CCHCI was paying salaries so high that it is illegal and violative of IRS rules/regulations and federal law, namely 26 U.S.C. §4958 regarding taxes on excess benefit transactions that gives rise to violation of 26 U.S.C. §7201 and 18 U.S.C. §1031 regarding criminal tax evasion and defrauding the government, respectively; b) CCHCI's illegally-high salaries may violate state laws regarding fraud, cronyism, misuse of public funds, and fiduciary duties of corporate directors and officers; c) a third-party, forensic accountant should be retained to conduct an investigation; d) Melk chose to ignore the recommendation of HRKnow about Mr. Walto's salary; and, e) Melk misrepresented to HRKnow that Mr. Walto's salary requirement was previously considered by the Board

and Finance Committee.

28.   On July 14, 2023, Melk informed Brake that Melk did not approve of or appreciate Brake's disclosure of Melk's malfeasance.  Brake stated to Melk that it was important for the Finance Committee to be made aware of Brake's findings.

29.   On July 17, 2023, Brake disclosed the situation to Ben Hur, partner at Fester & Chapman (F&C) accounting firm, because CCHCI was in the middle of its annual audit/filing of taxes and Brake wanted Mr. Hur to look into it so CCHCI could report accurately on its annual IRS Form 990.

30.   On July 20, 2023, Brake received via email information from Ms. Restad-Hamilton of HRKnow that salary ranges were not followed for Mr. Walto and Chief of Staff/Interim Chief Operating Officer (COO) Jessica King.  Ms. King was recommended to receive only a 10% increase for being an interim COO because she had recently been given a 47% increase in her salary.  Additionally, the information showed that Chief Clinical Information Officer Mr. Randal Christensen did not have a salary study done at time-of-hire and that Melk was recommended to receive only a base salary with no additional compensation.

31.   On July 24, 2023, Melk wrote an email to the Finance Committee falsely accusing Brake of unethical, dishonest, and illegal practices including intentionally preparing inaccurate minutes of the Finance Committee meeting on July 13, 2023 and intentionally deleting video of the meeting.

32.   Over the weeks following the Finance Committee meeting, Melk repeatedly insisted that there were no legal issues, no problem with the IRS, etc.; he alleged to other chiefs that Brake was trying to take Melk's job; and, he prevented Brake from attending meetings to prevent Brake from sharing information with anyone at CCHCI.

33.   Melk told former Board Treasurer Mignonne Hollis that Brake didn't know what he was doing in his job, shouldn't be focusing on the expenses, and should be focusing exclusively on revenue generation.  Melk told Ms. Hollis to teach Brake (because Brake did not know how) to focus on revenue generation and not the expenses.

1   Melk also told Ms. Hollis that Brake does not care about the employees of CCHCI and

2   that he simply sees them as widgets.

3          34.    Melk sent an email to another Board member questioning Brake's

4   knowledge and professional competency at his job because of Brake's focus on expense

5   control.  This Board member considers the statements in Melk's email to be false and

6   believes that Melk's statements brought Brake into disrepute, contempt, and ridicule and

7   impeached Brake's honesty, integrity, virtue, and reputation.  This Board member

8   responded to Melk that Brake is doing exactly what he was hired to do, then Melk tried to

9   put blame on Brake for tracking payments and legal compliance for another organization,

10  as if to persuade this Board member that Brake was incompetent and unfit for his job, and

11  that Brake was engaged in unethical practices.  This Board member understood Melk's

12  allegation about mis-tracking payments and legal compliance to be derived from a third-

13  party accounting firm audit, but the report was from March 2022, long before Brake

14  worked at CCHCI.  This Board member knew, and is certain that the other Board

15  members knew, that all of Melk's false statements about Brake related to things that

16  happened prior to Brake working at CCHCI, so they all knew that Brake was not

17  involved in those things.

18         35.    Melk made statements to former Board President Anita Baca that Brake

19  was inexperienced and rhetorically asked, since Brake was "fresh out of college," what

20  could he possibly know about accounting?  Melk accused Ms. Baca of having had a prior

21  relationship with Brake and working with Brake to take Melk's job.  Melk told Ms. Baca

22  that Brake caused unrest among the CCHCI leadership, so Melk caused "the rest of the

23  leaders to ice him out."  Ms. Baca knew that Melk's statements were false and believed

24  that Melk's statements were intended to bring Brake into disrepute, contempt, and

25  ridicule and to impeach Brake's honesty, integrity, virtue, and reputation.  Melk told Ms.

26  Baca that Brake went after Mr. Walto because of Brake's religious beliefs and because

27  Brake didn't like Mr. Walto's value system.

28         36.    Ms. Baca has stated that, "If you had spoken to Dr. Jon [Melk] prior to the

6

moment Adam [Brake] communicated a potential federal and state law violation, the sun rose and set with Adam and Jon would constantly speak positively about Adam's skills and competencies, and only spoke positively about Adam up until that point.  The moment Adam brought up the violation, I could tell his countenance changed and after that he started to talk consistently about Adam not having the experience to be a CFO.  Jon went after people when they disagreed with him.  When I resigned, I resigned because I cannot work for an organization that treats human beings the way they were treating Adam.  I have no doubt whatsoever that the adverse treatment was 100% retaliation for blowing the whistle to the board on federal and state law violations.  Jon's response wasn't "how can I fix this?"  It was "how can I get this blame off myself?"

37.     On July 28, 2023, F&C partner Rachel Locke sent a letter to Brake reaffirming the consequences of CCHCI's violation of 26 U.S.C. §4958 and recommending reevaluation of Mr. Walto's salary.  Ms. Locke also affirmed that the single most important point of data for determining fair-market wage was comparable compensation.  F&C independently compared Mr. Walto's position to other comparable Federally Qualified Health Centers (FQHC's) in Arizona, many of which are clients of F&C, and wrote that Mr. Walto's pay is significantly outside of the reasonable range.

38.     On July 31, 2023, Melk informed CCHCI Board members that he obtained confirmation from HRKnow that Mr. Walto's salary was reasonable and that Ms. Locke and Kevin Campberg of F&C would be changing their opinion in their letter of July 28, 2023.

39.     On July 31, 2023, Brake received a copy of the HRKnow market study, then called Mr. Shegelov, who told Brake that Melk rewrote and resubmitted to HRKnow Mr. Walto's job description and that Melk relentlessly pressured Mr. Shegelov into changing the fair-market range.  The market study was changed the night before at 10:37 p.m.

40.     On July 31, 2023, Brake called Mr. Campberg at F&C to learn what changed regarding their opinion and Mr. Campberg said that Melk contacted him the

night before around 11:00 p.m. and again at around 6:30 a.m. to relentlessly pressure him to rescind what F&C wrote during the week prior.  Mr. Campberg said he still thinks there may be an issue.

41.     On July 31, 2023, Brake was scheduled and set to make a presentation to the Board of Directors but, despite his presence at the meeting and several Board members' insistence that Brake make his presentation, Melk rushed the meeting and barred Brake from presenting any information to the Board.

42.     On August 1, 2023, Brake was "placed on leave pending an investigation" into alleged misconduct for bringing to the Board's attention CCHCI's violation of law.

43.     Brake expressed to Human Resources personnel that this was retaliatory for his bringing to the Board's attention CCHCI's violation of law.

44.     On August 2, 2023, Brake filed a formal complaint (via Form 13909) with the Internal Revenue Service.

45.     During his leave, Brake was subjected to an investigation by Robert Garcia, a lawyer hired by Defendants.  The nature of the questions posed during this investigation, which included inappropriate inquiries about Brake's personal beliefs and motives, suggests an intent to frame Brake negatively rather than objectively assess the situation.

46.     The investigation focused disproportionately on Brake's motives and character rather than his bringing to the Board's attention CCHCI's violation of law, indicating a biased approach designed to discredit him.

47.     Mr. Brake provided a detailed timeline of events and emphasized the financial discrepancies, IRS compliance issues, and violations of law that he observed.

48.     Mr. Garcia's questions often alluded to personal conflicts or biases, such as querying Brake about his religious beliefs, which are irrelevant to the violations of law that Brake brought to the attention of CCHCI.

49.     Subsequent discussions and reports from the investigation misconstrue Brake's actions as problematic, further indicating a skewed interpretation meant to

1   support a preconceived narrative against him.

2       50.     Statements of CCHCI employees show that Melk influenced the Board's

3   perception of Brake, casting him as a problematic or divisive figure without substantial

4   evidence.  Allegations of a coup attempt discussed during Board meetings, and the

5   portrayal of Brake in these discussions, align with efforts to create an environment hostile

6   to Brake, further isolating him and undermining his position.

7       51.     At the end of his notes, Mr. Garcia wrote that he believes Brake "acted in

8   good faith in the interests of the organization."

9       52.     Mr. Garcia outlined multiple violations of "organizational policy" by nearly

10  every C-Suite individual, including the repeat offender Melk, but Mr. Garcia outlined no

11  policy violation by Brake.

12      53.     Upon information and belief, Mr. Garcia was not allowed to present the

13  findings of his investigation due to interference by Melk and Board members supporting

14  the conspiracy to retaliate against Brake.

15      54.     On September 7, 2023, Brake was terminated for nonspecific violations of

16  policy.

17      55.     Brake breached no policy of CCHCI.

18      56.     CCHCI terminated Brake in retaliation for his bringing to the Board's

19  attention CCHCI's violation of state and federal law.

20      57.     Shortly after Brake's termination, Melk told a CCHCI employee that Melk

21  "got into [Brake's] computer, and [Brake] clearly had not done any work and that's the

22  reason Adam got fired."  Melk told this employee that Brake had not completed any

23  actual work during his entire time at CCHCI.  This employee knew this statement by

24  Melk to be false and understood this statement by Melk to mean that Brake was

25  professionally incompetent and unfit to practice his profession.

26      58.     Shortly after Brake's termination, CCHCI was scheduled for a site audit by

27  the Health Resources and Services Administration (HRSA).

28      59.     The HRSA site audit specifically mandates interviews with key financial

9

personnel, including the CFO or the acting CFO, to assess the FQHC's compliance with financial management standards.  Failure to meet these standards can lead to severe consequences, including the withdrawal of federal funding, imposition of penalties, mandatory corrective actions, and potentially the removal of key personnel such as Melk and Board members from their roles.  These outcomes could jeopardize the FQHC's operational capacity and financial stability, highlighting the gravity of compliance.

60.     Mr. Macpherran was the Director of Finance under Brake and Mr. Macpherran was also the immediate, past CFO.  After Brake's termination, Mr. Macpherran acted as the CFO and played a pivotal role during the HRSA site audit.

61.     Mr. Macpherran was previously convicted of fraud and embezzlement for which he was imprisoned and these prior convictions impact his credibility and integrity, particularly in a role where financial accountability is paramount.

62.     Mr. Macpherran is beholden to Melk and Melk withheld from Brake information regarding Mr. Macpherran's prior, felony convictions because, as Melk told Brake, "That's his story to tell."

63.     During the HRSA site audit, financial auditor Ms. Marie Thames made the following inquiries of CCHCI that directly address the financial integrity of CCHCI: a) whether CCHCI's financial management system reflected Generally Accepted Accounting Principles (GAAP) or Government Accounting Standards Board (GASB) principles; b) whether CCHCI was able to track actual expenditures against the HRSA-approved project budget; and, c) the capability of CCHCI's financial management systems to account for the expenditure of project funds and safeguard associated assets.

64.     An employee of CCHCI communicated to Brake that Mr. Macpherran intentionally misrepresented financial statements to the HRSA auditor and that, at a meeting after the HRSA site audit, Mr. Macpherran reported to CCHCI leaders that Ms. Thames asked Mr. Macpherran whether or not CCHCI's revenues were higher than its expenses.  Given that CCHCI was operating at a loss at the time, and that the fiscal year in which the loss occurred was already closed, the truthful answer to the question should

have been no, but Mr. Macpherran told Ms. Thames that the revenues were higher than the expenses.  In that meeting, in response to Mr. Macpherran's report, Melk said, "good job, Mac."

65.     Employees of CCHCI who were present at the meeting understood the misrepresentation that was made and understood Melk's approval of the misrepresentation, but in light of Brake's dismissal for speaking up, the employees were fearful about their own job security, so they did not speak up.

**COUNT 1 – TORTIOUS INTERFERENCE WITH CONTRACT (against Melk)**

66.     Brake hereby incorporates and re-alleges all of the foregoing paragraphs as if fully set forth here.

67.     Brake had an employment agreement with CCHCI.

68.     Melk, as the CEO of CCHCI, knew of Brake's employment agreement with CCHCI.

69.     Melk intentionally interfered with Brake's employment agreement with CCHCI, causing CCHCI to terminate the employment agreement.

70.     Melk's conduct was improper.

71.     As a result of the termination of the employment agreement with CCHCI, Brake suffered damage including loss of the benefits of the employment agreement, emotional suffering, and harm to his reputation.

**COUNT 2 – WHISTLEBLOWER RETALIATION (against CCHCI)**

72.     Brake hereby incorporates and re-alleges all of the foregoing paragraphs as if fully set forth here.

73.     Brake had information or a reasonable belief that CCHCI and/or Melk had violated or was violating, or would violate the Constitution or statutes of Arizona.

74.     Brake disclosed the information or belief to CCHCI (or a representative of CCHCI who Brake reasonably believed was in a managerial or supervisory position and had the authority to investigate the information provided by him and to take action to prevent further violations of the Constitution or statutes of Arizona).

75.     Brake was terminated because of his disclosure of the information or belief.

76.     As a result of CCHCI's violation of Arizona's public policy by discharging Brake, Brake suffered a) lost earnings and benefits to date and a decrease in earning power or capacity in the future; b) pain, discomfort, suffering, anxiety already experienced, and anxiety reasonably probable to be experienced in the future; c) reasonable expenses of necessary medical care, treatment, and services rendered and reasonably probable to be incurred in the future; d) physical injury; e) harm to his reputation; and, f) lost insurance coverage for his medical bills.

**COUNT 3 – DEFAMATION (against CCHCI and Melk)**

77.     Brake hereby incorporates and re-alleges all of the foregoing paragraphs as if fully set forth here.

78.     Defendants made, said, or wrote a defamatory statement of fact about Brake.

79.     Defendants' statement tends to bring Brake into disrepute, contempt, or ridicule or to impeach Brake's honesty, integrity, virtue, or reputation.  The defamatory nature of the statement is determined by the natural and probable effect a reading or hearing of the entire statement in context would have on the mind of the average reader or hearer.

80.     Defendants' statement was false.

81.     Defendants made, said, or wrote the statement to a third person.

82.     Defendants were negligent in failing to determine the truth of the statement. Defendants failed to use reasonable care in determining whether the statement was true or false.  Defendants' negligence may consist of action or inaction and negligence is the failure to act as a reasonably careful person would act under the circumstances.

83.     Defendants' statement caused Brake to suffer damage including a) impairment of reputation and standing in the community already experienced and reasonably probable to be experienced in the future; b) emotional distress, humiliation, inconvenience, and anxiety already experienced and reasonably probable to be

COUNXEL
LEGAL FIRM

1  experienced in the future; and, c) monetary loss experienced and reasonably probable to

2  be experienced in the future.

3    84.    Defendants' statement imputes to Brake a) a criminal offense punishable by

4  imprisonment or regarded by public opinion as involving moral turpitude or b) unfitness

5  for the proper conduct of his lawful business, trade, or profession and, as such, damages

6  are presumed and Brake is not required to prove any damages.

7                **COUNT 4 – RACKETEERING (against CCHCI and Melk)**

8    85.    Brake hereby incorporates and re-alleges all of the foregoing paragraphs as

9  if fully set forth here.

10    86.    Defendants engaged in a pattern of unlawful activity for the purpose of

11  financial gain, namely the continued operation of CCHCI, the continued payment of the

12  illegally-high salaries, etc.

13    87.    Defendants' pattern of unlawful activity consisted of at least two unlawful

14  acts that occurred no more than five years apart, that were related to each other, and that

15  were continuous or exhibited the threat of being continuous.

16  **Unlawful Act – ATTEMPT TO EVADE OR DEFEAT TAX (26 U.S.C. §7201) /**

17  **MAJOR FRAUD AGAINST THE UNITED STATES (18 U.S.C. §1031) / TAXES**

18  **ON EXCESS BENEFIT TRANSACTIONS (26 U.S.C. §4958)**

19    88.    Defendants committed the unlawful acts of attempting to evade or defeat

20  tax imposed by Title 26 of the United States Code and of major fraud against the United

21  States by violating 26 U.S.C. §4958 (Taxes on excess benefit transactions).

22  **Unlawful Act – FRAUDULENT SCHEMES AND ARTIFICES**

23    89.    Defendants committed the unlawful act of engaging in fraudulent schemes

24  and artifices by using false or fraudulent pretenses, representations, promises or material

25  omissions pursuant to a scheme or artifice to defraud and, as a result, obtained the benefit

26  of continued operation of CCHCI, the continued payment of the illegally-high salaries,

27  etc.

28  **Unlawful Act – ILLEGAL CONTROL OF AN ENTERPRISE**

COUNXEL
LEGAL FIRM

13

90.     Defendants committed the unlawful act of illegal control of an enterprise by engaging in racketeering (attempt to evade or defeat tax, fraudulent schemes and artifices, etc. for financial gain) to maintain control over (i.e., possess sufficient means to permit substantial direction over the affairs of) the enterprise consisting of CCHCI and Melk.

**Unlawful Act – ILLEGALLY CONDUCTING AN ENTERPRISE**

91.     Defendants committed the unlawful act of illegally conducting an enterprise by being associated together as an enterprise and conducting its affairs through racketeering (attempt to evade or defeat tax, fraudulent schemes and artifices, etc. for financial gain).

92.     Defendants' pattern of unlawful activity caused Brake to suffer damages.

93.     Brake's damages were a reasonably foreseeable result of Defendants' pattern of unlawful activity.

**Prayer for Relief**

WHEREFORE, Brake prays this Court for the following relief:

a.     Judgment against the Defendants for direct damages, consequential damages, treble damages (Racketeering), general damages, and special damages in an amount to be proven at trial but for no less than $1,000,000;

b.     An order enjoining Defendants from further defamation of Brake;

c.     An award of all his costs and attorney fees incurred in this action;

d.     For all other relief as may be just under the circumstances.

DATED this 17th day of May 2024.

COUNXEL LEGAL FIRM

/s/ Aaron S. Ludwig
Timothy F. Coons
Aaron S. Ludwig
2222 S. Dobson Rd., Ste. 1104
Mesa, AZ 85202
Attorneys for Plaintiff

# EXHIBIT B

FILED
Amy Hunley
CLERK, SUPERIOR COURT
09/28/2023  2:26PM
BY: RPORTER
DEPUTY

Case No.: S0200CV202300580
HON.  TERRY BANNON

COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Timothy F. Coons (031208)
TCoons@counxel.com
*Attorney for Plaintiff*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF COCHISE

| | |
|---|---|
| Adam Brake, an individual, | Case No: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Chiricahua Community Health Centers, Inc., an Arizona nonprofit corporation, and Jon Melk, an individual, | |
| | **TIER 3** |
| Defendants. | |

    **COMES NOW** the Plaintiff, Adam Brake, by and through his undersigned counsel Counxel Legal Firm (Timothy F. Coons, Esq.) and hereby files this Complaint against the Defendants, the Chiricahua Community Health Centers, Inc. and John Melk, hereafter referred to as "**Chiricahua**" and "**Melk**" respectively and collectively as "**Defendants**," for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Tortious Interference, Whistleblower Retaliation and Defamation, as further specified in the Complaint's Counts. In support of this Complaint the Plaintiff states and avers as follows:

### I.   Jurisdictional Allegations

1.   Plaintiff in this matter is an individual, a resident of Cochise County, Arizona.

1

2.   Upon information and belief, Defendant Chiricahua Community Health Centers, Inc., is an Arizona nonprofit corporation and a resident of Cochise County, Arizona.

3.   Upon information and belief, Defendant Jon Melk is an individual and a resident of Cochise County, Arizona.

4.   All acts or omissions that are the basis of or give rise to the causes of action included in this Complaint took place within Cochise County, Arizona.

5.   Jurisdiction and venue are appropriate in this court.

6.   Upon information and belief, this is a Tier 3 case for discovery purposes.

## II.   General Allegations

7.   Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

8.   Plaintiff was hired by Defendant Chiricahua in 2023 as Chief Financial Officer.

9.   Plaintiff hereby alleges that Chiricahua is a nonprofit corporation and therefore is subject to various rules and regulations, most importantly regarding the salary of executive staff.

10.  Upon information and belief, Defendant Melk is the Chief Executive Officer of Chiricahua.

11.  Plaintiff hereby alleges that all acts and omissions of Melk are attributable to Chiricahua and all acts and omissions of Chiricahua are attributable to Melk but-for those allegations with give rise to the individual cause of action against Melk.

12.  Plaintiff hereby alleges that both Chiricahua and Melk are liable for certain causes of action in this Complaint irrespective of the principal/agent relationship between Chiricahua and Melk.

13.  As part of Plaintiff's duties he oversaw routine, independent, third-party audits of Chiricahua's finances, records and business organization.

14.  One of the purposes of these audits was to ensure that Chiricahua maintained

1  financial stability by ensuring that executive compensation was within government
2  mandated guidelines.

3      14.  On or about July 13, 2023, an independent audit that Plaintiff oversaw revealed to
4  Plaintiff that various salaries of Chiricahua executives were violative of federal and state
5  rules regarding the compensation available to nonprofit executives, these salaries are
6  hereafter referred to as "out-of-scope salaries."

7      15.  The specific Internal Revenue Service rule that the out-of-scope salaries violate is
8  Section 4958 of the Internal Revenue Code which prohibits out-of-scope salaries absent
9  approval, defines their approval process and mandates penalties for violating Section 4958.

10      16.  Per government rules, out-of-scope salaries must go through an approval process
11  and be within a "fair market value" range of salaries, the approval process includes, at least,
12  an analysis of the salary by a third-party vendor, board approval of the salary and their
13  submission to government regulatory bodies for approval by that government regulatory
14  board prior to the paying of that salary (not after).

15      17.  The audit revealed that the out-of-scope salaries had been approved by Defendant
16  Melk directly but no evidence existed that the out-of-scope salaries had been subject to the
17  required salary study by a third-party vendor, approved by anyone other than Defendant
18  Melk, certainly not by Chiricahua's board or approved by the responsible government
19  regulatory board.

20      18.  Upon information and belief, certain executives of Defendant Chiricahua had had
21  salary study analysis done prior to their hiring but these salary studies were not followed.

22      19.  Upon information and belief, when salaries were presented to the Board of
23  Defendant Chiricahua they were presented in batches with the assumption that they had
24  been properly vetted and approved.

25      20. Plaintiff determined that since Defendant Melk, Chiricahua's CEO, was directly
26  involved in this malfeasance he would report the issue to Defendant Melk and Chiricahua's

COUNXEL
LEGAL FIRM

3

1    Finance Committee and did so in a Finance Committee meeting.

2        21.  On or about July 14, 2023, Defendant Melk first informed Plaintiff that Mr. Melk

3    did not approve of or appreciate Plaintiff's disclosure of Mr. Melk's malfeasance. Plaintiff

4    stated to Defendant Melk that it was important for the Finance Committee to be made aware

5    of Plaintiff's findings.

6        22.  On or about July 17, 2023, Defendant Melk unilaterally informed Plaintiff that the

7    out-of-scope salaries were justified despite the fact that they did not comply with Federal

8    guidance.

9        23.  Later that day, Plaintiff contacted Defendant Chiricahua's accounting firm and

10   disclosed his findings to Chiricahua's accounting liaison and asked them to investigate the

11   out-of-scope salaries as well.

12       24.  On or about July 19, 2023, Plaintiff was informed by another executive of

13   Chiricahua that Defendant Melk had begun to characterize Plaintiff reporting of this

14   violation of law as Plaintiff not being a "team player" and that Plaintiff was attempting to

15   organize a "coup" which was both false and directly harmful to Plaintiff's reputation.

16       25.  Upon information and belief, Defendant Melk's false comments about a "coup"

17   attempted were communicated to, and repeated by to front line staffmembers, various board

18   members at Defendant Melk's instigation.

19       26.  On or about July 20, 2023, Plaintiff was informed by the vendor who uncovered

20   the initial out-of-scope salaries found more out-of-scope salaries amongst the executives.

21       27.  Later that day, Plaintiff was informed that Defendant Melk was telling Chiricahua

22   executives that Plaintiff had lied to the Finance Committee about the violations of law for

23   personal reasons.

24       28.  On or about July 21, 2023, Defendant Melk unilaterally asserted to my client again

25   that there were no out-of-scope salaries.

26       29.  Later that day, Plaintiff contacted board members of Chiricahua to invoke

4

whistleblower protections as Defendant Melk's aims and designs to discredit Plaintiff had become apparent.

30. Plaintiff realized that he was being isolated from others at the office, particularly other executives that he regularly worked with.

31. Later that day, Defendant Melk again stated that no out-of-scope salaries existed, if any out-of-scope salaries did exist they could be justified, that justifications would be forthcoming and proactive and that the business value of the individuals receiving the out-of-scope salaries was not under dispute.

32. On or about July 24, 2023, Defendant Melk formally accused Plaintiff of unethical practices because of his reporting a violation of law and that Plaintiff was attempting to discredit Defendant Melk's leadership. Defendant Melk accused Plaintiff of disclosing the violations of law engaged in by Defendant Melk in a fashion which violated Chiricahua's bylaws.

33. Defendant Melk's accusations were false.

34. Defendant Melk informed Plaintiff that Plaintiff's duties would be directed by the Executive Committee.

35. Plaintiff informed Defendant Melk that this was a violation of Chiricahua's bylaws.

36. Later that day, Plaintiff was informed that the individuals receiving out-of-scope salaries had begun to share complaints about Plaintiff, very similar to the narrative raised by Defendant Melk.

37. On or about July 27, 2023, Defendant Chiricahua's leadership had a meeting where they specifically excluded Plaintiff, though he was Defendant Chiricahua's Chief Financial Officer. Plaintiff was informed of this meeting by an attendee to it. Plaintiff was informed that at the meeting Defendant Melk stated that Plaintiff was, falsely, on vacation.

38. On or about July 28, 2023, Plaintiff was informed by Defendant Chiricahua's

1    accounting team that the out-of-scope salaries merited formal investigation.

2    39.   On or about July 31, 2023, Plaintiff was informed that Defendant Melk informed

3    Defendant Chiricahua's Board that he had obtained a second opinion about the out-of-

4    scope salaries and that the second opinion determined that the salaries were not excessive,

5    notwithstanding the fact that no prior board approval for the salaries had been granted.

6    40.   Plaintiff contacted the vendor who performed the second opinion and obtained the

7    paperwork the vendor examined.

8    41.   The paperwork the vendor examined to render the second opinion on the out-of-

9    scope salaries revealed that Defendant Melk made alterations to the forms the night before

10   their submission to the vendor despite the forms being originally used months (or years)

11   prior.

12   42.   Furthermore, the vendor who provided the second opinion informed Plaintiff that

13   Defendant Melk had directed them to determine that the out-of-scope salaries were

14   reasonable.

15   43.   Additionally, Plaintiff was informed by Defendant Chiricahua's accounting team

16   that Defendant Melk had directed them to issue a new opinion that the out-of-scope salaries

17   were reasonable.

18   44.   Upon information and belief, even if the second opinions had been conducted

19   legitimately, the rules and regulations of out-of-scope opinions would have required the

20   salaries to be approved before being paid rather than after.

21   45.   In the evening of July 31, 2023, Plaintiff was to present his findings to the Board

22   of Defendant Chiricahua. While Defendant Melk presented information, Plaintiff was

23   barred from presenting any information to the Board.

24   46.  On or about August 1, 2023, Plaintiff was "placed on leave pending an

25   investigation" into alleged misconduct for raising a violation of law.

26   47.   This action in and of itself was defamatory as its purpose directly implied that

6

1      Plaintiff and no others had engaged in wrongdoing.

2      48.   No other person in Defendant Chiricahua's executive team was placed on leave.

3      49.   Plaintiff again expressed that this was retaliatory for his raising what he believed
4      was a violation of law.

5      50.   On or about August 2, 2023, Plaintiff filed a formal complaint with the Internal
6      Revenue Service regarding the out-of-scope salaries.

7      51.   During the sham investigation conducted by Defendant, Plaintiff was subjected to
8      invasive, intrusive and embarrassing requests and questioning by an "investigator" hired
9      by Defendants in order to trump up allegations of wrongdoing and justify terminating
10     Plaintiff.

11     52.   During the investigation, Defendants made various statements to the individuals
12     left at Chiricahua as well as to third parties that impugned Plaintiff's reputation.

13     53.   On or about September 7, 2023, Plaintiff was terminated for nonspecific violations
14     of organization policy.

15     54.   No specific policy violations were outlined and no other individual at Defendant
16     Chiricahua was terminated, or even investigated.

17     55.   Plaintiff breached no company policies.

18     56.   Upon information and belief, Defendants have breached company policy, public
19     policy and violated statutes with regards to the out-of-scope salaries and by retaliating
20     against Plaintiff for bringing the out-of-scope salaries to light.

21                **III.   Count I: Breach of Contract (Against Chiricahua)**

22     57.   Plaintiff hereby references and incorporates each preceding statement as if fully
23     set forth hereat.

24     58.   Plaintiff hereby alleges that a valid and binding employment contract existed
25     between the Plaintiff and Defendant Chiricahua for Plaintiff's employment.

26     59.   Plaintiff hereby alleges that this employment contract specified the terms and

7

1   conditions under which the Plaintiff could be terminated from his position.

2   60.  Plaintiff hereby alleges that the Defendant Chiricahua breached the employment
3   contract by terminating the Plaintiff without cause and in retaliation for Plaintiff's making
4   reports of Chiricahua and Melk's financial malfeasance.

5   61.  Plaintiff hereby alleges that Plaintiff has been damaged by Defendant Chiricahua
6   breaching the employment contract.

7   62.  Therefore, Defendant Chiricahua is liable to Plaintiff for Breach of Contract.

8   **IV.    Count II: Breach of the Implied Covenant (Against Chiricahua)**

9   63.  Plaintiff hereby references and incorporates each preceding statement as if fully
10  set forth hereat.

11  64.  Plaintiff hereby alleges that a valid and binding employment contract existed
12  between the Plaintiff and Defendant Chiricahua for Plaintiff's employment.

13  65.  Plaintiff hereby alleges that all contracts under Arizona law carry an implied
14  covenant of good faith and fair dealing whereby neither party shall act to deny the other
15  the rights and benefits of the contract.

16  66.  Plaintiff hereby alleges that the Defendant Chiricahua breached the employment
17  contract by terminating the Plaintiff without cause and in retaliation for Plaintiff's making
18  reports of Chiricahua and Melk's financial malfeasance.

19  67.  Plaintiff hereby alleges that by terminating Plaintiff without cause, Defendant
20  Chiricahua has acted in a way that denies Plaintiff the rights and benefits of the
21  employment contract.

22  68.  Plaintiff hereby alleges that Plaintiff has been damaged by Defendant Chiricahua
23  breaching the employment contract.

24  69.  Therefore, Defendant Chiricahua is liable to Plaintiff for Breach of the Implied
25  Covenant of Good Faith and Fair Dealing.

26

COUNXEL
LEGAL FIRM

## V.   <u>Count III: Unjust Enrichment (Against Chiricahua)</u>

70.  Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

71.  Plaintiff hereby alleges that Defendant Chiricahua has been enriched by receiving the benefits of Plaintiff's employment without compensating Plaintiff and for terminating Plaintiff without cause.

72.  Plaintiff hereby alleges that Plaintiff has been impoverished by Defendant Chiricahua terminating him without cause in violation of the employment contract.

73.  Plaintiff hereby alleges that there is a connection between the enrichment and the impoverishment as both arise out of Plaintiff's termination by Defendant Chiricahua without cause.

74.  Therefore, Defendant Chiricahua is liable to Plaintiff for Unjust Enrichment.

## VI.   <u>Count IV: Tortious Interference (Against Melk)</u>

75.  Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

76.  Plaintiff hereby states that Count IV is pled separately against Defendant Melk individually.

77.  Plaintiff hereby alleges that Plaintiff had valid contractual and business relations and/or expectancies with Chiricahua.

78.  Plaintiff hereby alleges that Defendant Melk knew of Plaintiff's valid contractual and business relations and/or expectancies with Chiricahua by being Chiricahua's CEO.

79.  Plaintiff hereby alleges that Defendant Melk intentionally interfered with Plaintiff's valid contractual and business relations and/or expectancies with Chiricahua by terminating Plaintiff from his employment without cause, causing the breach or termination of the contractual and business relations and/or expectancies between Plaintiff and Chiricahua.

9

80. Plaintiff hereby alleges that Defendant Melk acted improperly in firing Plaintiff without cause.

81. Plaintiff hereby alleges that Plaintiff has been damaged by the breach or termination of the contractual and business relations and/or expectancies with Chiricahua.

82. Therefore, Defendant Melk is liable to Plaintiff for Tortious Interference.

**VII.   Count V: Whistleblower Retaliation (Against Chiricahua)**

83.  Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

84.  Plaintiff hereby alleges that Plaintiff became aware that Defendant Chiricahua and Defendant Melk were, jointly and separately, violating state and federal law with regards to the compensation of Chiricahua's executive staff.

85.  Plaintiff hereby alleges that Plaintiff was under an obligation imposed by both company policy, public policy and statute to make Chiricahua aware of the discovered violations of law.

86.  Plaintiff hereby alleges that Plaintiff brought these violations of law to the awareness of Chiricahua's board as required by both company policy, public policy and statute.

87.  Plaintiff hereby alleges that Defendants did not investigate Plaintiff's findings or correct the instances of malfeasance discovered but, instead, engaged in actions which sought to obscure, occlude and hide the malfeasance of Defendants.

88.  Plaintiff hereby alleges that Defendant Chiricahua, at the direction of Defendant Melk, placed Plaintiff under discipline without cause, subjected Plaintiff to a sham investigation without cause and ultimately terminated Plaintiff without cause, all in retaliation for Plaintiff exposing Defendants' malfeasance.

89.  Plaintiff hereby alleges that Plaintiff's termination by Defendant Chiricahua was, therefore, retaliatory and in violation of company policy, public policy and statute.

1   90.  Therefore, Defendant Chiricahua is liable to Plaintiff for Whistleblower

2   Retaliation.

3   ### VIII.  Count VI: Defamation (Against Chiricahua)

4   91.  Plaintiff hereby references and incorporates each preceding statement as if fully

5   set forth hereat.

6   92.  Plaintiff hereby alleges that Defendant Chiricahua, by and through Defendant

7   Melk, made false, defamatory statements about Plaintiff regarding false allegations of

8   misconduct of Plaintiff.

9   93.  Plaintiff hereby alleges that Defendant Chiricahua, by and through Defendant

10  Melk, published these false, defamatory statements to third parties.

11  94.  Plaintiff hereby alleges that Defendant Chiricahua, by and through Defendant

12  Melk, knew the statements about alleged misconduct of Plaintiff were false when they were

13  made or acted in reckless disregard of whether the statements were true or false or

14  negligently failed to ascertain the truth or falsity of the statements.

15  95.  Plaintiff hereby alleges that Plaintiff has been damaged by the false, defamatory

16  statements of Defendants.

17  96.  Therefore, Defendant Chiricahua is liable to Plaintiff for Defamation.

18  ### Prayer for Relief

19  **WHEREFORE**, Plaintiff prays this Court for the following relief:

20  a.  Plaintiff requests judgment against the Defendants in an amount to be proven at

21  trial but for no less than $1,000,000;

22  b. Plaintiff requests an Order from this Court enjoining the Defendants from further

23  defaming the Plaintiff;

24  c.  Plaintiff requests an award of all their costs and fees incurred in this action;

25  d.  For all other relief as may be just under the circumstances.

26

11

RESPECTFULLY SUBMITTED this 28th day of September, 2023.

**COUNXEL LEGAL FIRM**

*/s/ Timothy F. Coons*
Timothy F. Coons Esq.
2222 S. Dobson Rd. Suite 1104
Mesa, AZ  85202
*Attorney for Plaintiff*

ORIGINAL of the foregoing E-filed
This 28th day of September, 2023, with:

Clerk of the Court
COCHISE COUNTY SUPERIOR COURT

By:  *Carolyn Button*

12

FILED
Amy Hunley
CLERK, SUPERIOR COURT
09/28/2023  2:26PM
BY: RPORTER
DEPUTY

Case No.: S0200CV202300580
HON.  TERRY BANNON

Person/Attorney Filing: Timothy Coons
Mailing Address: 2222 South Dobson Rd. Suite 1104
City, State, Zip Code: Mesa, AZ 85202
Phone Number: (480)536-6122
E-Mail Address: tcoons@counxel.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031208, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

| | |
|---|---|
| Adam Brake<br>Plaintiff(s),<br>v.<br>Chiricahua Community Health<br>Centers, et al.<br>Defendant(s). | Case No.<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Cochise County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.


RESPECTFULLY SUBMITTED this


By: Timothy Coons /s/
    Plaintiff/Attorney for Plaintiff

Person/Attorney Filing: Timothy Coons
Mailing Address: 2222 South Dobson Rd. Suite 1104
City, State, Zip Code: Mesa, AZ 85202
Phone Number: (480)536-6122
E-Mail Address: tcoons@counxel.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031208, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF COCHISE

Adam Brake
Plaintiff(s),
v.                                                    Case No.   S0200CV202300580
Chiricahua Community Health
Centers, et al.                                       **SUMMONS**
Defendant(s).

To: Chiricahua Community Health Centers

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, PO Drawer CK, Bisbee,
    Arizona 85603 or electronically file your Answer through one of Arizona's approved
    electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

AZturboCourt.gov Form Set #8288459

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  COCHISE

SIGNED AND SEALED this date:*September 28, 2023*

*Amy Hunley*
Clerk of Superior Court

By:*RPORTER*
Deputy Clerk



AZturboCourt.gov Form Set #8288459

Person/Attorney Filing: Timothy Coons
Mailing Address: 2222 South Dobson Rd. Suite 1104
City, State, Zip Code: Mesa, AZ 85202
Phone Number: (480)536-6122
E-Mail Address: tcoons@counxel.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031208, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF COCHISE

Adam Brake
Plaintiff(s),
v.
Chiricahua Community Health
Centers, et al.
Defendant(s).

Case No.   S0200CV202300580

**SUMMONS**

To: Jon Melk

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, PO Drawer CK, Bisbee,
   Arizona 85603 or electronically file your Answer through one of Arizona's approved
   electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  COCHISE

SIGNED AND SEALED this date:*September 28, 2023*

*Amy Hunley*
Clerk of Superior Court

By:*RPORTER*
Deputy Clerk



AZturboCourt.gov Form Set #8288459

FILED
Amy Hunley
CLERK, SUPERIOR COURT
10/06/2023  2:40PM
BY: ANMORENO
DEPUTY

# COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Timothy F. Coons (031208)
TCoons@counxel.com
*Attorney for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF COCHISE**

| | |
|---|---|
| Adam Brake, an individual, | Case No: S022CV202300580 |
| Plaintiff, | **ACCEPTANCE OF SERVICE** |
| vs. | |
| Chiricahua Community Health Centers, Inc., an Arizona nonprofit corporation, and Jon Melk, an individual, | |
| Defendants. | |

Gordon Lewis as Counsel for Defendants Chiricahua Community Health Centers, Inc. and Jon Melk, hereby accepts service and acknowledges receipt of the Complaint, Civil Cover Sheet, Certificate of Compulsory Arbitration and Summons in this matter on behalf of Defendants Chiricahua Community Health Centers, Inc. and Jon Melk. Pursuant to this signed Acceptance of Service, Defendants are deemed to have been personally served with the Complaint, Civil Cover Sheet, Certificate of Compulsory Arbitration and Summons on the date set forth below.

1

1    This Acceptance of Service is effective the 6th day of October, 2023 and has the

2    same effect as though the Pleadings had been personally served on the Defendants under

3    the Arizona Rules of Civil Procedure Rule 4(f)(2).

4         By accepting service, Defendants do not waive any defenses to the lawsuit, the

5    Court's jurisdiction, or venue.

6

7

8         RESPECTFULLY SUBMITTED this 6th day of October, 2023.

9                                    **JONES, SKELTON & HOCHULI, PLC**

10

11                                   /s/
                                     Gordon Lewis

12                                   40 North Central Ave, Suite 2700
                                     Phoenix, AZ 85004

13                                   *Attorney for Defendants*

14

15    ORIGINAL of the foregoing E-filed

16    This    day of October, 2023, with:

17    Clerk of the Court

18    COCHISE COUNTY SUPERIOR COURT

19

20    And COPY emailed this same day to:

21    Gordon Lewis
      Jones, Skelton &Hochuli, PLC

22    40 North Central Ave, Suite 2700
      Phoenix, AZ 85004

23

24

25    By: *Carolyn Button*

26

2

FILED
Amy Hunley
CLERK, SUPERIOR COURT
10/26/2023 4:13PM
BY: RPORTER
DEPUTY

1 | Gordon Lewis, Bar #015162
Zak A. Kuchler, Bar #037965
2 | JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
3 | Phoenix, Arizona 85004
Telephone: (602) 263-4479
4 | Fax: (602) 200-7897
glewis@jshfirm.com
5 | zkuchler@jshfirm.com
minuteentries@jshfirm.com
6 |
Attorneys for Defendants Chiricahua
7 | Community Health Centers, Inc. and Dr.
Jonathan Melk

8

## SUPERIOR COURT OF THE STATE OF ARIZONA

9

### COUNTY OF COCHISE

10

| | |
|---|---|
| 11  Adam Brake, an individual, | NO. S0200CV202300580 |
| 12                                   Plaintiff, | **DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT** |
| 13        v. | |
| 14  Chiricahua Community Health Centers, Inc., an Arizona nonprofit corporation, and Jon Melk, | (Assigned to the Honorable Terry Bannon) |
| 15  an individual, | |
| 16                                   Defendants. | |

17

18          Defendants Chiricahua Community Health Centers, Inc. and Dr. Jonathan Melk

19   (collectively, hereinafter, "CCH"), by and through undersigned counsel, pursuant to Rule

20   12(b)(6)[1] of the Arizona Rules of Civil Procedure, move to dismiss from Plaintiff's Complaint

21          _____

22          [1] Counsel for Defendants certify that before filing this motion, they attempted to confer with Plaintiff's counsel via email on October 25, 2023, pursuant to Rule 12(j), Ariz.R.Civ.P., regarding the issues presented in this Motion with the stated intent of avoiding motion practice.
23   Plaintiff's counsel did not respond to Defendants' counsel's October 25, 2023 email correspondence. Therefore, the parties have been unable to cure the issues presented in this Motion by permissible amendment.

12194947.1

Counts I, II, III, IV, V, and VI.[2]  This Motion is supported by the following Memorandum of Points and Authorities, Plaintiff's Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   STANDARD OF REVIEW

In determining whether a complaint adequately states a claim on which relief can be granted, courts must assume the truth of any well-pleaded factual allegations and indulge all reasonable inferences from those facts. *Coleman*, 230 Ariz. at 356, ¶ 9; *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). That said, a simple recital of the elements of a cause of action supported by conclusory statements is not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

Arizona appellate courts have embraced *Twombly* and *Iqbal*, and like the U.S. Supreme Court, have "specifically rejected an interpretation of Rule 12(b)(6)" that allows "'a wholly conclusory statement of claim . . . [to] survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery.'" *Dube v. Likins*, 216 Ariz. 406, 424, ¶ 14 (App. 2007) (supp. op.) (punctuation and citation omitted).

"When evidence extrinsic to the pleadings is offered and relied upon by the superior court in making its ruling, a motion to dismiss is generally treated as a motion for summary judgment." *Pettersen v. Plexus Holdco, LLP*, 1 CA-CV 22-0141, 2023 WL 364498, *3, ¶10 (App. Jan. 24, 2023), *review denied* (Aug. 25, 2023) (citing Ariz.R.Civ.P. 12(d)). "An exception to this general rule applies, however, when extrinsic evidence 'is integral to, and referenced within' the complaint. *Id.* (quoting *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 12 (App. 2018);

---

[2] The above-referenced Counts are Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, whistleblower retaliation, and defamation, respectively.

2

*see also ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 289, ¶ 7 (App. 2010) ("[E]ven if a document is not attached to the complaint, if it is central to the claim, the court may consider it without converting a motion to dismiss to a motion for summary judgment.")). "Because a 'plaintiff obviously is on notice of the contents of [a] document' cited and discussed in the complaint, the 'rationale underlying the conversion rule'—that a plaintiff must be allowed to respond to extraneous material—does not apply." *Id.* (quoting *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶ 14 (App. 2010)).

## II.    FACTUAL ALLEGATIONS

Plaintiff was hired by CCH in December 2022 and commenced his employment on January 1, 2023 as Chief Financial Officer under a "valid and binding employment contract between [] Plaintiff and [CCH] for Plaintiff's employment." (Plaintiff's Complaint, ¶¶ 8, 64; **Exhibit A**, Plaintiff's signed offer letter).[3] The terms, conditions, and obligations of Plaintiff's employment were set forth in Plaintiff's offer letter, which was signed by both Plaintiff and Dr. Melk on December 6, 2023, and which made clear that Plaintiff's employment was at-will, could be terminated "at any time for any reason, with or without cause, with or without notice." (**Exhibit A**, p. 2).

"As part of Plaintiff's duties[,] he oversaw routine, independent, third-party audits of [CCH's] finances, records, and business organization." (Plaintiff's Complaint, ¶ 13). Plaintiff asserts, in the performance of his job duties, he oversaw an independent audit of CCH that revealed "various salaries of [CCH] executives were violative of federal and state rules regarding the compensation available to nonprofit executives." (*Id.* at ¶ 14). Plaintiff specifically cites in his Complaint a section of the Internal Revenue Code ("IRC") that CCH purportedly had violated;

---

[3] CCH has attached Plaintiff's signed offer letter as an Exhibit to this Motion, and asserts that such extrinsic evidence does not convert this Motion to one of summary judgment because the signed offer letter "is integral to, and referenced within" Plaintiff's Complaint. *Dunn v. FastMed Urgent Care PC*, 245 Ariz. at 38, ¶ 12.

3

however, not once in Plaintiff's Complaint does he cite specifically, or even generally, any state law that Plaintiff claims CCH had violated. (*Id*. at ¶ 15). Plaintiff further claims that he brought these purported violations of the IRC and "state law" to the attention of CCH's Finance Committee. (*Id.* at ¶ 20).

Plaintiff contends that after disclosing the alleged violations of the IRC and "state law," Dr. Melk had "begun to characterize Plaintiff reporting of this violation of law as Plaintiff not being a 'team player' and that Plaintiff was attempting to organize a 'coup' which was both false and directly harmful to Plaintiff's reputation." (*Id.* at ¶ 24). Plaintiff also alleges that Dr. Melk "formally accused Plaintiff of unethical practices because of his reporting a violation of law and that Plaintiff's was attempting to discredit [Dr. Melk's] leadership" (*Id.* at ¶ 32), however, Plaintiff does not allege that Dr. Melk made this "formal accusation" to any third party.

Plaintiff alleges that on or about "August 1, 2023, Plaintiff was 'placed on leave pending an investigation' into alleged misconduct for raising a violation of law," (*Id.* at ¶ 46), and that such investigatory leave "was defamatory as its purpose directly implied that Plaintiff and no others had engaged in wrongdoing." (*Id.* at ¶ 47). Plaintiff contends that "[d]uring the investigation, Defendants made various statements to the individuals left at [CCH] as well as to third parties that impugned Plaintiff's reputation;" however, Plaintiff neither alleges what the purported "statements" were nor to whom they were communicated. (*Id.* at ¶ 52). On or about September 7, 2023, Plaintiff's employment was terminated. (*Id.* at ¶ 53).

Plaintiff asserts in his Complaint claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference, "whistleblower retaliation," and defamation. (*Id.* at p. 7-11). In support of his breach of contract and implied covenant of good faith and fair dealing claims, Plaintiff alleges that CCH "breached the employment contract by terminating the Plaintiff without cause and in retaliation for Plaintiff's

making reports of [CCH] and [Dr. Melk's] financial malfeasance." (*Id.* at ¶¶ 60, 66). However, Exhibit A makes clear that Plaintiff's employment was at-will. (**Exhibit A**).

### III.   PLAINTIFF'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM FAILS AS A MATTER OF LAW (COUNT II)

To prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: "(1) the defendant exercised express discretion in a way that was inconsistent with the plaintiff's reasonable expectations regarding the contract or (2) the defendant acted in a manner not expressly excluded by the contract's terms but that nevertheless adversely impacted the plaintiffs reasonably expected benefits of the bargain." *Rzendzian v. Marshall & Ilsley Bank*, 1 CA-CV 13-0058, 2014 WL 3610897, *2 (App. July 17, 2014).

"In Arizona, '[t]he employment relationship is contractual in nature.' A.R.S. § 23-1501(A)(1). There is an implied covenant of good faith and fair dealing in employment contracts." *Murar v. AutoNation Inc.*, CV-19-05793-PHX-MTL, 2021 WL 3912849, *3 (D. Ariz. Sept. 1, 2021) (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385 (1985), *superseded in part by* A.R.S. § 23–1501. "Nevertheless, the [Arizona Employment Protection Act ("AEPA")] 'sets out the limited circumstances in which an employee can bring a wrongful termination action in Arizona.'" *Id.* (quoting *Harper v. State*, 241 Ariz. 402, 404 (App. 2016); *Ferren v. Westmed Inc.*, CV-19-00598-TUC-DCB, 2021 WL 778545, *3 (D. Ariz. Mar. 1, 2021) ("The AEPA exclusively governs employee breach of contract claims resulting from termination."). "A wrongful termination claim based on the breach of an employment contract is generally only available if there is a written contract 'setting forth ... a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship.'" *Id.* (quoting A.R.S. § 23-1501(A)(2). "Thus, the implied covenant of good faith and fair dealing only applies in the employment context *where there is a written contract evidencing that the employment is not at-will*." *Id.* (citing A.R.S. § 23-1501(A)(2)) (emphasis added). Consequently,

5

"[i]n the context of a pure at-will employment contract with no agreed-to benefits and no promise of continued employment or tenure, a termination without cause does not breach the implied covenant of good faith and fair dealing." *White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1065 (D. Ariz. 2009). "The [AEPA] . . . places the burden squarely on the employee to prove his or her employment relationship is not severable at will because it falls within one of the statutorily limited circumstances." *Taylor v. Graham Cnty. Chamber of Commerce*, 201 Ariz. 184, 194 (App. 2001).

Here, Plaintiff accepted and signed the offer letter provided to him by CCH. (**Exhibit A**, p. 3). The offer letter, which was also signed by Dr. Melk, set forth the terms and obligations of Plaintiff's employment and expressly stated that Plaintiff's employment was *at-will* and could be terminated "at any time for any reason, with or *without cause*, with or without notice, by [Plaintiff] or [CCH]." (**Exhibit A**, pp. 2-3 (emphasis added)). Plaintiff first contends in support of his breach of the implied covenant of good faith and fair dealing claim that CCH "breached the employment contract by terminating the Plaintiff without cause . . . ." (Plaintiff's Complaint, ¶ 66). As is illustrated in **Exhibit A**, CCH did not modify the default at-will employment scheme in Arizona by restricting its right to terminate Plaintiff's employment to only for cause. Plaintiff's employment was at-will, and accordingly, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff further asserts in support of his implied covenant of good faith and fair dealing claim that his employment was terminated "in retaliation for Plaintiff's making [sic] reports of [CCH] and [Dr. Melk's] financial malfeasance." (Plaintiff's Complaint, ¶ 66). Taking to be true Plaintiff's allegation, which CCH and Dr. Melk deny, this allegation also fails to state a claim for breach of the implied covenant of good faith and fair dealing. In *Murar*, and like Plaintiff here, the plaintiff argued that the defendants "breached the covenant of good faith and fair dealing by firing him in retaliation for reporting and refusing to engage in unlawful conduct."

12194947.1

2021 WL 3912849 at *4. In finding that the plaintiff's employment was at-will, the court held that the plaintiff's termination, "by itself, did not breach the covenant," and granted summary judgment for the defendants. *Id.* Consequently, because Plaintiff's employment here was at-will, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing, and this claim must be dismissed.

IV.   **PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW (COUNT I)**

To prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) breach of said contract; and (3) resulting damages. *Graham v. Asbury*, 112 Ari. 184, 185 (1975). As set forth above, the AEPA exclusively governs employee breach of contract claims resulting from termination. *White*, 664 F.Supp.2d at 1061. "The AEPA displaces the common law and 'codifies the at will [employment] presumption and specifies very few situations in which the presumption may be rebutted.'" *Ferren*, 2021 WL 778545 at *3 (quoting *White*, 664 F.Supp.2d at 1061). One of these situations, and the only situation relevant and applicable to the facts alleged in support of Plaintiff's breach of contract claim, is when an employee is allegedly terminated in retaliation for disclosing information or a reasonable belief to the employer that the employer or another employee has violated, is violating, or will violate Arizona law. A.R.S. § 23-1501(A)(3). A plaintiff thus "only has a claim when the retaliation relates to public policy as articulated in an Arizona statute or the Arizona constitution." *Gutierrez v. CoreCivic, Inc.*, CV-18-00713-PHX-MHB, 2019 WL 13240777, *4 (D. Ariz. Nov. 27, 2019).

Plaintiff, in his Complaint, contends that he brought to the attention of CCH's Finance Committee violations of "state and federal law," and that he was terminated for doing so. (Plaintiff's Complaint, ¶¶ 20, 60, 84). The only law that Plaintiff identifies in his Complaint as having brought to the board's attention, however, is a section of the federal Internal Revenue Code ("IRC"). (*Id.* at ¶ 15). Alleged violations of federal law, rules, or regulations, such as the IRC, are

12194947.1

incapable of supporting an AEPA retaliation claim. *Ferren*, 2021 WL 778545 at *4; *Galati v. America West Airlines, Inc.*, 69 P.3d 1011, 1014 (Ariz. Ct. App. 2003) (explaining that if an employee discloses a violation of a federal regulation to his employer, and he is subsequently terminated, he does not have a remedy under the AEPA). While Plaintiff identifies the exact section of the IRC that, according to Plaintiff, CCH violated and which Plaintiff informed the Finance Committee of, Plaintiff interestingly fails to identify *any* state authority that he claims to have brought to the attention of CCH's Finance Committee. Plaintiff's bare allegation that he reported violations of "state law," without more, is a wholly conclusory statement not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680; *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 420 (2008).

Furthermore, as evidenced by **Exhibit A**, Plaintiff cannot establish that CCH breached an express term in his employment contract because such contract states, unequivocally, that Plaintiff's employment was at-will and could be terminated with or without cause. Accordingly, Plaintiff's breach of contract claim fails, and must be dismissed.

## V.   PLAINTIFF FAILED TO STATE A CLAIM FOR "WHISTLEBLOWER RETALIATION" (COUNT V)

Rule 8(a)(2) of the Arizona Rules of Civil Procedure mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff alleges in his Complaint under Count V that CCH "is liable to Plaintiff for Whistleblower Retaliation;" however, neither this statement, nor any others in the Complaint, satisfy Arizona's notice pleading standard, and accordingly, this Count should be dismissed. It is inappropriate and impracticable to task CCH, or this Court for that matter, with attempting to deduce under what authority and framework Plaintiff is asserting a retaliation claim. There are numerous federal and state employment-related anti-retaliation statutes by which Plaintiff may intend to bring his claim under, each with their own proof scheme and nuances; however, Plaintiff's Complaint fails to

8

provide a statement sufficient to put CCH on notice of which retaliation statute(s)/framework(s) he is asserting his claim under. It would be highly prejudicial and avoidably cost-intensive to require CCH to answer Plaintiff's "Whistleblower Retaliation" claim as it is stated in Plaintiff's Complaint, and it withholds from CCH the knowledge of whether it may remove this action, at its discretion. In addition, the vague labeling of Count V as merely "Whistleblower Retaliation," and the corresponding absence of any particular authority for which Plaintiff is asserting his purported retaliation claim, consequently fails to show that Plaintiff is entitled to any relief, let alone identifies what relief is even available to Plaintiff for this claim. Accordingly, Plaintiff fails to state a claim for "Whistleblower Retaliation" and this count must be dismissed.

## VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION (COUNT VI)

To plead a claim for defamation, a plaintiff must allege that (1) the defendant made a statement concerning the plaintiff to a third party; (2) the statement was false; (3) the defendant acted knowingly, recklessly, or negligently in disregarding the falsity of the statement; and (3) the statement harms the plaintiff's reputation for honesty or integrity, or otherwise brings the plaintiff into disrepute. *See Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (App.1988); *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P .2d 781, 787 (1989). "To defeat a defendant's motion for summary judgment in a defamation case, the plaintiff must present evidence 'sufficient to establish a prima facie case with convincing clarity.'" *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 14 (App. 2017*) (citation omitted).

Whether a statement is capable of bearing a defamatory meaning is a determination reserved for the courts. *Takieh v. O'Meara*, 252 Ariz. 51, 57, ¶ 15 (App. 2021), *review denied* (Apr. 7, 2022). "As a matter of law, a statement is not actionable if it is comprised of 'loose, figurative, or hyperbolic language' that cannot reasonably be interpreted as stating or implying facts 'susceptible of being proved true or false.'" *Id.* (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990)). Likewise, "[s]tatements cast as subjective beliefs are generally insulated

9

1    from defamation liability," but "if a statement of opinion may be proven false, 'it is actionable as

2    defamatory.'" *Id.* at 57, ¶ 16 (quoting *Dube v. Likins*, 216 Ariz. 406, 419, ¶ 46 (App. 2007)). "[A]

3    statement is not actionable if it does not present 'the kind of empirical question a fact-finder can

4    resolve.'" *Id.* (quoting *Yetman v. English*, 168 Ariz. 71, 81 (1991)).

5           Here, Plaintiff contends in his Complaint that Dr. Melk "had begun to characterize

6    Plaintiff reporting [sic] of this violation of law as Plaintiff not being a 'team player' and that

7    Plaintiff was attempting to organize a 'coup' which was both false and directly harmful to

8    Plaintiff's reputation." (Plaintiff's Complaint, ¶ 24). Plaintiff does not allege in his Complaint that

9    any other *statements* were made to a third party which could plausibly be interpreted as

10   defamatory; instead, Plaintiff merely "recit[es] [] the elements" of defamation in alleging that

11   CCH "made various statements to the individuals left at [CCH] as well as to third parties that

12   impugned Plaintiff's reputation." (*Id.* at ¶ 52). The foregoing is insufficient to state a claim for

13   defamation under *Iqbal* and *Twombly*. Finally, Plaintiff alleges that him being placed on an

14   investigatory leave constitutes a "defamatory" action. (Plaintiff's Complaint, ¶ 47). This

15   allegation misses the mark because one cannot prove that an "act," in and of itself, is true or false

16   for defamation purposes. Plaintiff is not contesting whether he was placed on leave. Moreover,

17   CCH's placing of Plaintiff on a leave was a matter between Plaintiff and CCH, and does not

18   represent a communication or publication to a third party, which Plaintiff notably does not allege

19   nor identify in his Complaint. (*Id.*).

20          The alleged "team player" and "coup" statements identified in Plaintiff's Complaint,

21   which Dr. Melk and CCH deny, do not constitute defamatory statements as a matter of law, and

22   accordingly, Plaintiff's defamation claim should be dismissed. Plaintiff admits in his Complaint

23   that Dr. Melk's purported statements were the opinions, or "*characterize[ations]*" of Plaintiff's

24   conduct and intent underlying such. (*Id.* at ¶ 24). These alleged statements are those which do not

25   present "the kind of empirical question a fact-finder can resolve." *Yetman*, 168 Ariz. at 81. Instead,

12194947.1

these statements represent the subjective beliefs and perspectives held by Dr. Melk. Whether Plaintiff is a "team player" is not an *empirical* question that may be proven false.

Similarly, Dr. Melk's purported comment that Plaintiff was "attempting to organize a 'coup'" represents a statement – taking it to be true – of Dr. Melk's subjective belief as to Plaintiff's intent underlying his conduct. One's interpretation of another's motivations and intent is strictly a subjective endeavor, and one which similarly cannot be proven false. In addition, the alleged "coup" remark constitutes "figurative" and "hyperbolic" language which cannot reasonably be interpreted as stating or implying facts "susceptible of being proved true or false." *Takieh*, 252 Ariz. at 57, ¶ 15. A "coup" is a "[p]olitical move to overthrow existing government by force." *Black's Law Dictionary* 317 (5th ed. 1979). Not only is CCH not a governmental entity, but Plaintiff does not allege that Dr. Melk made a statement that Plaintiff attempted to do anything by *force* either. Taking Plaintiff's allegations to be true, Dr. Melk's purported "coup" statement is hyperbolic, figurative, incapable of being proven true or false, and an articulation of Dr. Melk's subjective belief regarding Plaintiff's motivations and intent underlying actions he took. Consequently, Plaintiff has failed to state a claim for defamation, and his claim should be dismissed.

## VII.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT III)

"[I]n order to prevail upon a theory of unjust enrichment, a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit." *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354 (Ct. App. 1986). But, "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *Id.*; *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no

12194947.1

application."). Therefore, a plaintiff cannot maintain an unjust enrichment claim if the alleged benefit he conferred was required under a contract. *Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 277 (Ct. App. 1993).

Here, Plaintiff alleges in his Complaint that "a valid and binding employment contract existed between the Plaintiff and Defendant [CCH] for Plaintiff's employment." (Plaintiff's Complaint, ¶ 64; *see* **Exhibit A)**. Indeed, the offer letter, signed by both Plaintiff and Dr. Melk, formed a contract which governed the rights and obligations of each party, and therefore, for this reason alone, Plaintiff's unjust enrichment claim fails as a matter of law.

**VIII.   CONCLUSION**

For the foregoing reasons, Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and defamation fail as a matter of law, and CCH accordingly moves the Court to dismiss these claims with prejudice. Similarly, Plaintiff fails to state a claim for "whistleblower retaliation," and CCH likewise moves the Court to dismiss this claim.

DATED this 26th day of October, 2023.

JONES, SKELTON & HOCHULI P.L.C.


By /s/ Gordon Lewis
    Gordon Lewis
    Zak A. Kuchler
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Defendants Chiricahua Community
    Health Centers, Inc. and Dr. Jonathan Melk

12

12194947.1

1  ORIGINAL of the foregoing electronically filed
   this 26th day of October, 2023.

2
   COPY of the foregoing mailed/e-mailed
3  this 26thday of October, 2023, to:

4  Timothy F. Coons
   COUNXEL
5  2222 S. Dobson Rd Suite 1104
   Mesa, Arizona 85202
6  TCoons@counxel.com
   Attorney for Plaintiff
7

8
   /s/ Jennifer Bernardo
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

13

FILED
Amy Hunley
CLERK, SUPERIOR COURT
12/11/2023  4:34PM
BY: LTUPER
DEPUTY

1 Gordon Lewis, Bar #015162
Zak A. Kuchler, Bar #037965
2 JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
3 Phoenix, Arizona 85004
Telephone:  (602) 263-4479
4 Fax:  (602) 200-7897
glewis@jshfirm.com
5 zkuchler@jshfirm.com
minuteentries@jshfirm.com
6
Attorneys for Defendants Chiricahua
7 Community Health Centers, Inc. and Jon Melk

8                    **SUPERIOR COURT OF THE STATE OF ARIZONA**

9                              **COUNTY OF COCHISE**

10 Adam Brake, an individual,                    NO. S0200CV202300580

11                              Plaintiff,       **DEFENDANTS' REPLY IN SUPPORT OF**
                                                 **THEIR MOTION FOR PARTIAL**
12             v.                                **DISMISSAL**

13 Chiricahua Community Health Centers, Inc., an   (Assigned to the Honorable Jason A.
Arizona nonprofit corporation, and Jon Melk,     Lindstrom)
14 an individual,

15                              Defendants.

16

17            Defendants Chiricahua Community Health Centers, Inc. and Dr. Jonathan Melk

18 (collectively, hereinafter, "CCH"), hereby furnish their Reply in Support of Their Motion for

19 Partial Dismissal.[1]

20 //

21 //

22 //

23 _____

        [1] CCH's Motion for Partial Dismissal of Plaintiff's Complaint is hereinafter referred to as
the "Motion."

116489733.1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   CCH COMPLIED WITH RULE 7.1(h)

3
        CCH fully complied with the requirements set forth under Rule 7.1(h) of the

4
Arizona Rules of Civil Procedure. The Rule provides:

5
            When these rules require that a "good faith consultation certificate"
            accompany a motion or that the parties otherwise consult in good

6
            faith, the movant must attach to the motion a separate statement
            certifying and demonstrating that the movant has tried in good faith

7
            to resolve the issue by conferring with--or attempting to confer with-
            -the party or person against whom the motion is directed. The

8
            consultation required by this rule must be in person or by telephone,
            and not merely by letter or email.

9

10
        Here, CCH's counsel attempted to confer with Plaintiff's counsel about the issues set forth

11
in its Motion via email. This email was sent to Plaintiff's counsel the day before CCH was required

12
to file a responsive pleading.[2] The email expressly stated "[s]o as to avoid the time and costs

13
associated with motion practice, [CCH] prefers to bring these matters to your attention in hopes

14
of resolving the defects through stipulation and/or amendment."[3] CCH's counsel, however, did

15
not receive any response to this communication. Accordingly, to ensure that CCH timely filed its

16
responsive pleading to Plaintiff's Complaint, CCH filed its Motion.

17
        Rule 7.1(h) mandates that a movant "[try] in good faith to resolve the issue by

18
conferring with--*or attempting to confer with*--the [opposing] party." (emphasis added). CCH's

19
counsel's effort fully complies with the Rule, and Plaintiff cannot ignore CCH's counsel's effort

20
to confer and then claim that Plaintiff's failure to respond somehow invalidates CCH's Motion.

21
The Court should disregard Plaintiff's claim that Rule 7.1 was violated and determine the merits

22
of the Motion.

23

24
_____

    [2] *See* **Exhibit A**.

25
    [3] *Id.*

Here, CCH made a good faith attempt to confer with Plaintiff to resolve the issues set forth in its Motion. Plaintiff conflates in his Response (1) the requirement of attempting to confer, with (2) the medium by which actual conferral must take place. Had Plaintiff responded to CCH's October 25th email at any time within the ~27 hours prior to when CCH filed its Motion, the Parties could have scheduled a telephone call to confer on the issues and/or stipulated to an extension for CCH to file its responsive pleading. Indeed, CCH's October 25th email articulated the basis [and applicable authority] for those claims it intended to move to dismiss for purposes of framing and informing what CCH expected would be a forthcoming telephone call. Plaintiff's failure to respond to CCH's October 25th email in any capacity in fact precluded CCH's ability to even schedule a phone call or in-person meeting. Only as a result of Plaintiff's radio-silence following its receipt of CCH's October 25th email did a Rule 7.1(h) telephone call not take place. Accordingly, CCH's Motion should not be dismissed, nor should Plaintiff be awarded his attorneys' fees incurred in preparing his Response.

## II. PLAINTIFF'S EMPLOYMENT WAS AT-WILL, AND PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS MUST BE DISMISSED.

Plaintiff contends in his Response that select provisions from CCH's Employee Handbook somehow modified the default at-will employment relationship, which would allow for claims of breach of contract and breach of the implied covenant of good faith and fair dealing. (Plaintiff's Response, pp. 8-9). Plaintiff's assertion that his employment was anything other than a purely at-will relationship overlooks long-standing Arizona statutory and common law. The public policy of the State of Arizona, expressed under the AEPA, is that "[t]he employment relationship is severable at the pleasure of either the employee or the employer unless both the employee and the employer have signed a written contract to the contrary setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise

3

expressly restricting the right of either party to terminate the employment relationship." A.R.S. §

23-1501. In lieu of a written contract signed by the employer and the employee, a plaintiff can

establish that the right of either party to terminate the employment relationship was restricted [thus

negating the at-will nature of the relationship] through express terms of an employer's handbook,

*if that document expresses the intent that it is a contract of employment*." *Id.* (emphasis added).

Plaintiff cites CCH's Whistleblower policy as the source of his deviation from at-

will employment. This policy, contrary to Plaintiff's contention, offers no evidence of any

modification to the presumptive at-will nature of Plaintiff's employment. As a matter of law, if a

statement in an employee handbook "is merely a description of the employer's present policies .

. . *it is neither a promise nor a statement that could reasonably relied upon as a commitment*."

*Demasse v. ITT Corp.*, 194 Ariz. 500, 505, ¶ 15 (Ariz.1999) (emphasis added); *see Higby v.

Newby*, CV03-0899PHX-SMM, 2006 WL 359862 (D. Ariz. Feb. 8, 2006). Indeed, Plaintiff signed

a written acknowledgement and receipt of CCH's Employee Handbook which expressly provides

[as Plaintiff concedes in his Response] that the "handbook is not a contract of employment,

express or implied, between me and CCHCI and that I should not view it as such, or as a guarantee

of employment of any specific duration."[4] This language was reiterated to Plaintiff in his offer

letter, which he also signed, as shown in Exhibit A to CCH's Motion. Plaintiff's employment is

therefore "at-will" as a matter of law.

Accordingly, Plaintiff's breach of contract and breach of the covenant of good faith and

fair dealing claims fail as a matter of law and should be dismissed. Because Plaintiff's employment

contract was "at-will," and could be terminated by either party with or without cause and with or

without notice, CCH's termination of Plaintiff's employment does not breach its contract as a

---

[4] *See* **Exhibit B**. CCH has attached Plaintiff's signed acknowledgement of CCH's
Employee Handbook as an Exhibit to this Reply, and asserts that such extrinsic evidence does not
convert either the Motion or Reply to one of summary judgment because the signed
acknowledgement "is integral to, and referenced within" Plaintiff's Response. *Dunn v. FastMed
Urgent Care PC*, 245 Ariz. 35, 38, ¶ 12 (App. 2018).

matter of law. In addition, the implied covenant of good faith and fair dealing only applies in the employment context where there is a written contract evidencing that the employment is <u>not</u> "at-will." *White v. AKDHC, LLC*, 664 F.Supp.2d 1054, 1065 (D. Ariz. 2009). Based on the allegations in and attachments to the Complaint, Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims are legally untenable and must be dismissed.

### III.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW.

With respect to Plaintiff's Unjust Enrichment Claim, Plaintiff contends that CCH's Motion is premature "as the court must determine whether a contract (as the Plaintiff proposes) does in fact exist." (Plaintiff's Response, p. 12, ¶¶ 21-23). CCH does not contest whether a contract existed. Under Arizona law, "'[t]he employment relationship is *contractual* in nature,' with only a specific type of employment contract being sufficient to limit severability." *Fuentes v. Cnty. of Santa Cruz*, CV-21-00220-TUC-DCB, 2023 WL 2528328, *3 (D. Ariz. Mar. 15, 2023) (emphasis added). Plaintiff had an "at-will" employment contract, so his unjust enrichment claim fails. *Torina v. Massachusetts Mut. Life Ins. Co*, 2021 WL 1930095 (D. Ariz. Apr. 14, 2021) *report and recommendation adopted*, CV1803075PHXJASLCK, 2021 WL 1923762 (D. Ariz. May 13, 2021) ( affirming that "unjust enrichment does not apply when a contract specifically governs the rights of each party"). To establish a claim for unjust enrichment, a plaintiff must show, in part, "the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541 (Ct. App. 2002); *Torina*, 2021 WL 1930095 at *2 ("*Brooks* merely encapsulates the unjust enrichment requirement that the litigant have no legal remedy available"). Plaintiff is afforded legal remedies under the AEPA [which exclusively governs employee breach of contract claims resulting from termination], and therefore, his unjust enrichment claim fails.

Plaintiff, in his Response, for the first time, alleges that he was not compensated for his services. (Plaintiff's Response, p. 11, ¶ 2-3). This allegation is absent from Plaintiff's Complaint, and therefore cannot save this claim from dismissal. In addition, Plaintiff's remedy

1   for this newly concocted claim would lie under Arizona's wage statutes, and he is thus precluded

2   from bringing an unjust enrichment claim under these allegations.

3          Plaintiff's allegation that his termination without cause supports a claim for unjust

4   enrichment is also unfounded. Neither Plaintiff's offer letter [*see* Exhibit A of CCH's Motion] nor

5   CCH's Whistleblower policy cited in Plaintiff's Response state or can plausibly be construed to

6   mean that Plaintiff could be terminated only for cause. Accordingly, Plaintiff's unjust enrichment

7   claim should be dismissed.

8   **IV.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION**

9          Plaintiff asserts that the alleged statements that he was not a "team player" and that

10  he was staging a "coup" are factual statement that are provable as false, and therefore state a claim

11  for defamation. Plaintiff asserts that the statements imply "either that his motives were entirely

12  selfish, or that what he should have been doing is following the CEO unquestionably." (Plaintiff's

13  Response, p. 10, ¶¶ 9-11, p. 12, ¶¶ 4-6). Clearly established Arizona law, however, provides that

14  "a statement is not actionable if it does not present 'the kind of empirical question a fact-finder

15  can resolve.'" *Takieh v. O'Meara*, 252 Ariz. 51, 57, ¶ 16 (App. 2021), *review denied* (Apr. 7,

16  2022) (quoting *Yetman v. English*, 168 Ariz. 71, 81 (1991)). Metaphorical language and opinions

17  that are not provable as either true or false are not actionable as defamation. *Harris v. Warner in*

18  *& for Cnty. of Maricopa*, 527 P.3d 314, 319, ¶ 17  (Ariz. 2023) (holding that the following

19  statements about respondent could not be reasonably interpreted as a factual assertion, not

20  provable as false, or both, and therefore were not actionable: Respondent had "'absolutely no

21  control over his emotions'; conducted himself in a manner that was 'downright frightening' and

22  'unhinged'; was 'acting like ANTIFA'; surrounded himself with 'thugs;' 'didn't even have

23  enough faith in his own voice'").

24         By Plaintiff's own admission, CCH's alleged "team player" and "coup" statements

25  were "characteriz[ations]" of Plaintiff's conduct. This alleged statement is precisely the type of

6

116489733.1

loose, figurative language and opinion that cannot be proven true or false. As a consequence, Plaintiff's claim for defamation, based on these statements, must be dismissed.

Plaintiff also claims that being placed on Administrative Leave is an act that can be considered defamatory. This claim fails for several reasons. First, Plaintiff <u>was</u> placed on Administrative Leave. There is no basis for claiming defamation based on an action that actually occurred. In addition, "[c]ommunication between two agents of the same principal is a publication for defamation purposes *subject to qualified privilege*." *Dube v. Likins*, 216 Ariz. 406, 419, ¶ 41 (App. 2007) (emphasis added). The "common interest" privilege is one. *Id.* (citing Restatement (Second) of Torts § 596, cmt. d (1977)). Under this privilege, "[a]n occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." *Id.* at cmt. c ("The rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them"); *Green Acres Tr. v. London*, 141 Ariz. 609, 617 (1984) ("Through the [common interest] qualified privilege, courts facilitate the exchange of information by protecting statements about matters affecting the goals of that organization or group"). Thus, to the extent Plaintiff refers to a purported intra-office communication of Plaintiff's administrative leave, such publication is privileged, and Plaintiff has not plead facts sufficient to overcome the privilege.

Moreover, Arizona does not recognize the tort of compelled "self-publication" [where the defamed person is the recipient of the communication and then publishes it to a third person]. *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 465 (D. Ariz. 1996). Therefore, to the extent that Plaintiff was placed on Administrative Leave and he thereafter informed other third-parties, such does not constitute a publication for purposes of Plaintiff's defamation claim. As with his defamation claim based on the alleged "coup" and " team player" statements, Plaintiff fails to

7

state a claim for defamation by being placed on administrative leave and his defamation claim should be dismissed.

## V.   PLAINTIFF'S WHISTLEBLOWER RETALIATION CLAIM FAILS TO MEET ARIZONA'S PLEADING STANDARD.

In its Motion, CCH informed the court that Plaintiff failed to identify any basis for his claim of "whistleblower retaliation." (CCH's Motion at pg. 8). Plaintiff's Response, for the first time, asserts that the anti-retaliation section of the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501, is the basis for his retaliation claim. (Plaintiff's Response, p. 4, ¶¶ 11-12). Plaintiff omits from his Response, however, that the AEPA is narrowly tailored and applicable to terminations that are taken in retaliation for the employee's disclosure of violations of "*the Constitution of Arizona or the statutes of this state.*" A.R.S. § 23-1501(A)(3)(c)(ii) (emphasis added). A plaintiff thus "only has a claim when the retaliation relates to public policy as articulated in an Arizona statute or the Arizona constitution." *Gutierrez v. CoreCivic, Inc.*, CV-18-00713-PHX-MHB, 2019 WL 13240777, *4 (D. Ariz. Nov. 27, 2019). Alleged violations of federal law, rules, or regulations, such as the Internal Revenue Code, are incapable of supporting an AEPA retaliation claim. *Ferren v. Westmed Inc.*, CV-19-00598-TUC-DCB, 2021 WL 778545, *4 (D. Ariz. Mar. 1, 2021).

Accordingly, Plaintiff's retaliatory discharge claim must be predicated upon Plaintiff's purported disclosure of violations of an Arizona statute or the Arizona Constitution. Plaintiff, however, has failed to comply with Arizona's notice pleading standard in this respect. Plaintiff's does not cite any Arizona statute that CCH had allegedly violated with respect to the compensation of nonprofit executives, because such a statute does not exist (*Id.*).

To prevail on a retaliation claim asserted under the AEPA, Plaintiff must establish in part that (1) he had an *objectively reasonable* belief that CCH or one of its employees had violated the Arizona Constitution or Arizona statutes and (2) he disclosed this information or reasonable belief to someone he believed had the authority to investigate the information and take

8

action. *Gutierrez*, 2019 WL 13240777, at *5; *Gray v. Motorola, Inc.*, 407 F. App'x 103, 105 (9th Cir. 2010). Plaintiff is required to plead more than a legal conclusion regarding such and allege facts regarding his reasonable belief that an Arizona statute was violated. Anything less would require the Court to "speculate about hypothetical facts" concerning the allegation. *Skelton*, 252 Ariz. at 588. Plaintiff's Complaint, at present, includes *only* a legal conclusion that CCH had violated state law. It fails to satisfy Arizona's notice pleading standard, and accordingly, Plaintiff's whistleblower claim should be dismissed.

In addition, even if Plaintiff pled that he held a reasonable belief that CCH had committed theft, which he did not, Plaintiff must show that he disclosed this belief "to someone he believed had the authority to investigate the information and take action." *Gutierrez*, 2019 WL 13240777, at *5. Not once in Plaintiff's Complaint does he allege that he reported to someone with "the authority to investigate the information and take action" that CCH or Defendant Melk had engaged in criminal conduct of any kind, because he did not make such report. Instead, Plaintiff claims to have reported only the purported findings set forth in the independent audit, which he has also never claimed contained findings of any criminal conduct. Consequently, Plaintiff's "whistleblower retaliation" claim fails as a matter of law and should be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, CCH respectfully requests that its Motion be granted in its entirety.

116489733.1

1   DATED this 11<u>th</u>  day of December, 2023.

2                                    JONES, SKELTON & HOCHULI P.L.C.

3

4                                    By /s/ Gordon Lewis

5                                        Gordon Lewis
                                         Zak A. Kuchler
                                         40 N. Central Avenue, Suite 2700
6                                        Phoenix, Arizona 85004
                                         Attorneys for Defendants Chiricahua Community
7                                        Health Centers, Inc. and Jon Melk

8
    ORIGINAL of the foregoing electronically filed
9   this 11th day of December, 2023.

10  COPY of the foregoing e-mailed
    this 11th day of December, 2023, to:
11
    Timothy Coons, Esq.
12  Anthony Saccocio, Esq.
    COUNXEL
13  2222 S. Dobson Rd., Suite 1104
    Mesa, AZ 85202
14  TCoons@counxel.com
    ASaccocio@counxel.com
15  *Attorneys for Plaintiff*

16

17   /s/ Megan Axlund

18

19

20

21

22

23

24

25

                                        10

FILED
Amy Hunley
CLERK, SUPERIOR COURT
11/29/2023  2:10PM
BY: RPORTER
DEPUTY

1
2
3
4
5
6
7

# COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Anthony Saccocio  (038427)
ASaccocio@counxel.com
*Attorney for Plaintiff*

8      **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
9      **IN AND FOR THE COUNTY OF COCHISE**

| | |
|---|---|
| Adam Brake, an individual, | Case No: S022CV202300580 |
| Plaintiff, | ***CORRECTED* CERTIFICATE OF SERVICE OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| Chiricahua Community Health Centers, Inc., an Arizona nonprofit corporation, and Jon Melk, an individual, | |
| Defendants. | |

18          Notice is hereby given that Plaintiff Adam Brake, by and through counsel

19   undersigned, has served upon Defendants on the 29th of November, 2023 his Response to

20   Defendant's Motion to Dismiss.  This Corrected Certificate of Service is filed to notify the

21   Court of a service error in serving the responsive pleading on Defendants on November

22   11th , 2023 when filed by Plaintiff with the Court.  The parties have agreed to extend

23   Defendants Reply time to rectify the service error of Plaintiff's Response to the Motion to

24   Dismiss.

25
26

1

RESPECTFULLY SUBMITTED this  29th day of November, 2023.

**COUNXEL LEGAL FIRM**

*/s/Anthony Saccocio*
Anthony Saccocio
2222 S. Dobson Rd. Suite 1104
Mesa, AZ  85202
*Attorney for Plaintiff*

ORIGINAL of the foregoing E-filed
This 29th day of November, 2023, with:

Clerk of the Court
COCHISE COUNTY SUPERIOR COURT

And COPY emailed this same day to:

Gordon Lewis
Jones, Skelton &Hochuli, PLC
40 North Central Ave, Suite 2700
Phoenix, AZ 85004

By:  *Carolyn Button*

2

FILED
Amy Hunley
CLERK, SUPERIOR COURT
12/04/2023 1:14PM
BY: RPORTER
DEPUTY

**SUPERIOR COURT, STATE OF ARIZONA, In and for the County of Cochise**

| | | |
|---|---|---|
| ADAM BRAKE, an individual,<br><br>          Plaintiff,<br><br>vs.<br><br>CHIRICAHUA COMMUNITY HEALTH CENTERS, INC, an Arizona nonprofit corporation, and JON MELK, an individual,<br><br>          Defendants. | Case No.<br>S0200CV202300580<br><br>ORDER<br>OF RECUSAL | file stamp only |

| | |
|---|---|
| **HONORABLE TERRY BANNON**<br>**DIVISION SIX** | **By: Debbee Watkins      (12/04/23)**<br>**Judicial Administrative Assistant** |

The Court noting there is a conflict in this case, and good cause appearing,

**IT IS ORDERED** this Court recuses itself from this matter.

**IT IS FURTHER ORDERED** referring this matter to Court Administration for reassignment to another Division.

**PREVIOUS ASSIGNMENT:** None

**RECORD MAY SHOW** a Motion for Partial Dismissal of Plaintiff's Complaint was filed October 26, 2023.

eSigned by TERRY BANNON  12/04/2023 13:10:42 9TF2Vkcv

mailed/distributed: (date)(initials)

cc:     Timothy F. Coons, Esq.  TCoons@counxel.com  /  Anthony Saccocio, Esq.  ASaccocio@counxel.com
        Gordon Lewis, Esq.  glewis@jshfirm.com  /  Zak A. Kuchler, Esq.  zkuchler@jshfirm.com
        Court Administration  Courtservices@cochise.az.gov

FILED

DEC – 4 2023

AMY J. HUNLEY
CLERK OF SUPERIOR COURT
BY:_____

COCHISE COUNTY SUPERIOR COURT

OFFICE OF THE COURT ADMINISTRATOR

| | | |
|---|---|---|
| ADAM BRAKE, an individual,<br>                              Plaintiff(s),<br><br>Vs.<br><br>CHIRICAHUA COMMUNITY<br>HEALTH CENTER, INC, an Arizona<br>nonprofit corporation, and JOHN<br>MELK, an individual,<br>                              Defendant(s). | ORDER:<br><br>REASSIGNMENT<br>OF JUDGE | CASE NO:<br><br>CV202300580 |

Pursuant to Administrative Order No. 2023-003, In Re: Regular and Special

Assignments of Judges, the HONORABLE TERRY BANNON recuses itself from

this case, AND a referral to the Court Administrator's office for reassignment,

This case is reassigned to **Honorable JASON A. LINDSTROM, Division Five**, for

all further proceedings.

Previous Divisions: VI (Recusal)

DATED:      December 4, 2023 (ss)

Distributed: _____

xc:     Timothy F. Coons, Esq., tcoons@counxel.com (e)
          Anthony Saccocio, Esq., asoccocio@counxel.com (e)
          Gordon Lewis, Esq., glewis@jshfirm.com (e)
          Zak A. Kuchler, Esq., zkuchler@jshfirm.com (e)
          Honorable Jason A. Lindstrom, Division Five (e)
          Court Admin/Case Mgmt. Div. (e)

FILED
Amy Hunley
CLERK, SUPERIOR COURT
11/13/2023  3:34PM
BY: RPORTER
DEPUTY

# COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Anthony Saccocio  (038427)
ASaccocio@counxel.com
*Attorney for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF COCHISE

| | |
|---|---|
| Adam Brake, an individual, | Case No: S022CV202300580 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'MOTION FOR PARTIAL DISMISSAL** |
| Chiricahua Community Health Centers, Inc., an Arizona nonprofit corporation, and Jon Melk, an individual, | |
| Defendants. | (Assigned to the Honorable Terry Bannon) |

**COMES NOW** the Plaintiff, Adam Brake, by and through his undersigned counsel Counxel Legal Firm (Anthony Saccocio, Esq.) and hereby files this motion in opposition to the Defendants', the Chiricahua Community Health Centers, Inc., and John Melk (hereinafter referred to as "CCHCHI" and "Melk" respectively, and collectively as "defendants") motion for partial dismissal. In support of this motion in opposition, the Plaintiff states and avers as follows:

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COUNXEL
LEGAL FIRM

## **FAILURE TO MEET AND CONFER**

Pursuant to 16 A.R.S. Rule 7.1(g)(h), a motion must be accompanied by a good faith consultation certificate, evidencing that the movant has made a genuine attempt to resolve the matter through direct, personal consultation with the opposing party. This rule explicitly requires that such a consultation be conducted in person or by telephone, and not merely through impersonal written communications such as letters or emails. The intent behind this requirement is clear: to foster a constructive dialogue that could lead to a resolution without the need for judicial intervention, thereby promoting judicial economy and the efficient resolution of disputes.

In the present case, the movant has failed to adhere to these procedural requirements. The record will show that the only attempt at communication our firm received from the movant was via email sent one day prior to the filing of their motion to dismiss. This sole attempt falls short of the mandated personal or telephonic consultation required by Rule 7.1. There was no effort made to engage in a direct conversation that Rule 7.1 envisions as necessary for a good faith resolution attempt. The movant's actions thus undermine the rule's purpose and deprive the parties of an opportunity for meaningful engagement that could obviate the need for this Court's intervention.

As a consequence of the failure to confer, the instant motion should be dismissed and the attorney's fees awarded to the Plaintiff for the response to the motion to dismiss.

## **FACTUAL BASIS**

For the purposes of this motion in opposition, the Plaintiff hereby incorporates by reference all of the factual allegations as set forth in the original complaint. We respectfully request the Court consider these previously asserted facts in their entirety for the adjudication of the present motion.

COUNXEL
LEGAL FIRM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**POINT I**
**THE STANDARD FOR PROPER PLEADING HAS BEEN MET**

A motion seeking dismissal "…is appropriate when, as a matter of law, the Plaintiff is not 'entitled to relief under any interpretation of the facts susceptible of proof.'" *France v. Arizona Counties Insurance Pool*, 519 P.3d 1029 (App. 2022). When considering a motion to dismiss for failure to state a claim, a court must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient. *Hustrulid v. Stakebake*, 516 P.3d 18 (2022). When adjudicating a motion to dismiss for failure to state a claim, Arizona courts look only to the pleading itself and consider the well-pled factual allegations contained therein. *Brittner v. Lanzilotta*, 246 Ariz. 294, 438 P.3d 663 (2019) In assessing the motion to dismiss, the Court must consider the allegations in the Complaint and determine whether they establish a plausible claim for relief. The facts, as alleged, depict a clear case of whistleblower retaliation, breach of contract, and defamation that falls within the statutory protections aimed at preventing such injustices.

These factual allegations, presumed true for the sake of this motion, lay the groundwork for causes of action that are plausible on their face. Plaintiff's claim is not merely conceivable, but is buttressed by specific factual assertions that elevate it above speculative levels. The timing of Plaintiff's dismissal, proximate to the whistleblowing activity, paints a narrative of causation that is plausible and worthy of exploration through discovery.

Finally, motions to dismiss at this stage in litigation are disfavored. As stated in *Arizona Soc. Of Pathologists v. Arizona Health Care Cost Containment System Admin.*, 201 Ariz. 553, 557 (2002):

1
2
3

> "Dismissals for failure to state a claim are disfavored and should not be granted unless it appears certain that a party would not be entitled to relief on its asserted claim under any state of facts susceptible of proof."

4
5

Likewise, the court in *Swift Transportation Co. of Arizona L.L.C. v. Arizona Department of Revenue*, 249 Ariz. 382, 387 (2020) held:

6
7
8

> "[M]otions to dismiss are disfavored because they test the legal sufficiency of the complaint without the benefit of a fully developed factual record."

### POINT II

9

### Statutory Protection for Whistleblowers Overrides the At-Will Employment Doctrine

10
11
12
13
14

Arizona employment law explicitly prohibits the dismissal of employees in retaliation for disclosing unlawful activities at their workplace, as codified in A.R.S. § 23-1501. This provision embodies the state's strong public policy interest in preventing organizations from engaging in unlawful conduct and safeguarding employees who expose such infractions.

15
16
17
18
19
20

In the instant matter, Mr. Brake's termination following his report of improper practices constitutes a *prima facie* case of retaliatory discharge. His actions – reporting violations of law – are precisely the sort of conduct safeguarded by § 23-1501. Accordingly, the defendant's reliance on the at-will employment doctrine is misplaced as the statute clearly carves out exceptions to this rule, signaling that the protection of whistleblowers supersedes the at-will policy. § 23-1501 states:

21
22
23
24

> "Firing for bad cause – one against public policy articulated by constitutional, statutory or decisional law – is not a right inherent in the at-will contract, or in any other contract, even if expressly provided."

25
26

COUNXEL
LEGAL FIRM

4

Here, Mr. Brake's actions fall squarely within the activities protected by §23-1501. As stated in *Murcott v. Best Western Intern., Inc.*, 198 Ariz. 349, 357 (2000) the court held the following with respect to whistleblowing:

> "The few Arizona decisions discussing public policy violations for whistle-blowing discharges recognize certain essential elements. In *Wagner v. City of Globe,* the Arizona Supreme Court described a whistle-blower as an employee "who exposes wrongdoing on the part of his employer and is then discharged." 150 Ariz. 82, 88, 722 P.2d 250, 256 (1986). For a whistle-blowing employee to succeed on a public policy-based wrongful discharge claim, the court must find "some 'important public policy interest embodied in the law' has been furthered by the whistleblowing activity."

In the instant matter, there is no question that Mr. Brake's communiqué of an employee who is not paid according to not-for-profit regulations is one that furthers the public's interest. IRS IRC 4958 specifically outlines the manner in which not-for-profit entities may pay their employees. The very purpose of this is to continue the charitable purpose of the non-profit.

A.R.S. § 23-1501(c)(ii) likewise prohibits the termination of an employee who reasonably believes the employer is violating, has violated, or will violate the Constitution of Arizona, or Arizona statutes. Prior to his termination the Plaintiff reasonably believed that the overpayment of Dr. Dennis Walto amounted to theft, a violation of A.R.S. § 13-1802. At the filing of this motion in opposition, Plaintiff still believes the vast overpayment in contravention of the initial third party's analysis of proper payment amounts to embezzlement and fraud.

The Defendants argue that because there are several whistleblower statutes (state and federal), that the Plaintiff has failed to adhere to the criteria of Rule 8(a)(2) of stating a short and plain claim. This argument is without merit as it is apparent from the facts alleged that A.R.S. § 23-1501 is implicated.

Crucially, the need to specifically state the statute upon which the pleading is predicated is not required, only that the necessary facts are alleged. This concept is iterated in *Don Kelland Materials, Inc. v. Langel*, 114 Ariz. 374. 375 (1977). There the court held the following with respect to proper pleading:

> "In determining whether a complaint states facts upon which relief may be granted, the court considers only the facts alleged."

Similarly, in *Guerrero v. Copper Queen Hospital*, 112 Ariz. 104, 106 (1975) the court held:

> "In testing a complaint for a failure to state a claim, the question is whether enough is stated which would entitle the plaintiff to relief upon some theory to be developed at trial. The purpose of the rule is to avoid technicalities and give the other party notice of the basis for the claim and its general nature."

As to the claim for retaliation based on whistleblower status, the Plaintiff has surely demonstrated facts that indicate as such, and no doubt reached the low bar of claiming relief upon "some theory to be developed at trial."

## POINT III
## PLAINTIFF HAD MORE THAN AN "AT-WILL" CONTRACT

Legal precedent in Arizona recognizes modification of at-will employment based on employment documents. Arizona courts have held that materials like employee handbooks can modify the terms of at-will employment if they contain language that, to a reasonable employee, signifies an intent to do so. This doctrine recognizes that official employment documents can create legitimate expectations on which employees rely. Because of this, and because of the specific clauses within the CCHCI Employee Handbook, the defendants breached their contract with the Plaintiff when the terminated him in contravention of said contract. In *Demasse v. ITT Corp*. 194 Ariz. 500, 505 (1999) the court held:

> "In the case of at-will employment, parties are free to create a different relationship beyond one at will and define the parameters of that relationship, based upon the totality of their statements and actions.

The court in *Demasse* continues:

> "A statement is contractual only if it discloses "a promissory intent or [is] one that the employee could reasonably conclude constituted a commitment by the employer. If the statement is merely a description of the employer's present policies ... it is neither a promise nor a statement that could reasonably be relied upon as a commitment." Soderlun v. Public Serv. Co., 944 P.2d 616, 620 (Colo.App.1997). An implied-in-fact contract term is formed when "a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship at-will had been limited.

> When an employer chooses to include a handbook statement "that the employer should reasonably have expected the employee to consider as a commitment from the employer," that term becomes an offer to form an implied-in-fact contract and is accepted by the employee's acceptance of employment. Soderlun, 944 P.2d at 621."

The plaintiff concedes more recent case law has narrowed the scope of inclusion of employee handbooks as an instrument that can modify an at-will contract. However, the possibility of such an alteration does still exist. In *Proctor v. Safeway Food & Drug, Inc.*, 2007 WL 2892944 (D. Ariz.) held the following:

> "As to the first element, the Arizona Supreme Court in *Leikvold v. Valley View Comty. Hosp.*, 688 P.2d 170, 173 (Ariz.1984), *superseded on other grounds by statute*, A.R.S. § 23-1501, *et seq.*, 'held that representations in a personnel manual upon which employees reasonably rely, can become terms of an employment contract and can limit an employer's ability to discharge employees.'"

That said, case law controls and the plaintiff is willing to concede:

> "Such actions, either not issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representation in the manual."

COUNXEL
LEGAL FIRM

7